UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY Eastern District of Kentucky
LONDON                           F I L E D

NOV 3 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-611-GWU

JAMES HEATH,                                          PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled.  If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3.  If no, the
    claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities?  If yes, proceed to

1

Heath

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.    <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.    If no, proceed to Step 7.    <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Heath

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Heath

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Heath

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Heath

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.   Varley  v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, James Heath, was found by an Administrative Law Judge (ALJ)

to have "severe" impairments consisting of coronary artery disease (status post stent

replacement in 2001 and status post myocardial infarctions in 2001), a history of

shortness of breath, chronic left knee pain secondary to osteoarthritis (status post

arthroscopic surgery for meniscal tear), obesity, chronic low back pain secondary to

degenerative  disc  disease  of  the  lumbar  spine  (status  post  lumbar

laminectomy/diskectomy and status post lumbar laminectomy with excision of

fragments). (Tr. 25).  Nevertheless, based in part on the testimony of a vocational

expert (VE), the ALJ determined that Mr. Heath retained the residual functional

capacity to perform a significant number of light and sedentary jobs existing in the

economy and, therefore, was not entitled to benefits. (Tr. 26-30).

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age, education, and work experience could perform any jobs if he were

7

Heath

limited to occasionally lifting and carrying 20 pounds from waist level and needed to avoid any lifting from the floor level, with no carrying for extended distances, and capable of frequently lifting and carrying 10 pounds, and also had the following non-exertional impairments. (Tr. 68). He: (1) could stand and walk a total of two hours in an eight-hour day, with a sit/stand option at ½ hour intervals, but could sit for six hours total; (2) could occasionally push and pull or use foot controls with the left lower extremity; (3) could never climb ladders and ropes; (4) could occasionally climb stairs and ramps, kneel, squat, crouch, and bend; (5) needed to avoid concentrated exposure to cold, damp weather or extremely hot and humid weather, and avoid fumes, dust and gases, full body vibration and driving or riding for extended distances or time in vibratory vehicles, and should not operate heavy, moving equipment. (Tr. 68-9). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 69-70).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Heath alleged disability in his current applications dated August 14, 2003 due to lower back pains, arm problems, knee problems, poor vision, and arthritis, with an alleged onset date of January 21, 2001. (Tr. 108-10, 178). He had filed prior

8

Heath

applications with a similar onset date, which were denied at the reconsideration level on August 30, 2001 (Tr. 76).

Although Mr. Heath had a history of treatment for lower back pain, including surgery, well before his alleged onset date (e.g., Tr. 245-73) and a cardiac catheterization on January 25, 2001, after which he apparently returned to work for a time (Tr. 235, 274), none of his treating physicians offered an opinion regarding residual functional capacity during the relevant period after the alleged onset date.[1] State agency physicians who reviewed the record in December, 2003 and April, 2004 felt that Mr Heath would be capable of "medium" level exertion with non-exertional restrictions consistent with the ALJ's hypothetical question. (Tr. 343-7, 458-64).

The plaintiff objects on appeal to the ALJ's decision to discount a specific residual functional capacity form prepared by Dr. James Templin, a one-time examiner, on June 17, 2004. The form limits Mr. Heath to lifting only 2 to 5 pounds occasionally, and less than full-time standing and walking, among other restrictions. (Tr. 480-3). The ALJ noted that the form was inconsistent with statements in Dr. Templin's narrative report, which indicated that Mr. Heath was unable to lift and carry

---

[1]Dr. John W. Gilbert, a neurosurgeon, limited Mr. Heath to lifting no more than 25 pounds in October, 1998 (Tr. 273), but the plaintiff testified that he had returned to his former job as a car mechanic, which required some heavy lifting, after this restriction was given (Tr. 48-9).

9

Heath

items weighing greater than 20 pounds from waist level or carry it for any extended distance or time, and that he needed to avoid any lifting from the floor level, was unable to engage in activities requiring prolonged standing or walking, or any kneeling, squatting, crouching, stooping, bending or climbing, needed to avoid the repetitive use of foot controls with the left foot,  and to avoid working in strenuous conditions, especially cold, damp weather or extremely hot and humid weather or environments. (Tr. 478).[2]  In the opinion of the ALJ, the narrative restrictions were more consistent with the other opinions of record, including the 25 pound lifting restriction from Dr. Gilbert and another one-time examiner,   Dr. Mark A. Vollenweider, who found no specific limitations in carrying "light" objects, or in "prolonged" standing and walking, handling, hearing or seeing. (Tr. 340).  In any case, as a one-time examiner, Dr. Templin was not entitled to greater weight than Dr. Vollenweider, also a one-time examiner.

The plaintiff argues that Dr. Gilbert's narrative report also limited him to lifting ten pounds, but in support cites a page from his RFC form (Tr. 482), not the narrative. The plaintiff also argues that Dr. Vollenweider's report is internally

---

[2]Dr. Templin's examination had revealed tenderness of the cervical and lumbosacral spine, tenderness and swelling of the finger joints, severe crepitation of the knees bilaterally with a substantial reduction in the range of motion of the left knee, forward flexion of the lumbar spine reduced to 48 degrees, decreased sensation in the right leg in a dermatomal pattern consistent with L5, and a reduced range of motion of the hips bilaterally. (Tr. 476-7). Reflexes were normal. (Tr. 477).

inconsistent in stating that he had significant medical conditions but concluding that he had essentially no restrictions. However, the mere diagnosis of a medical condition is not enough to establish specific restrictions. See, e.g., Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988); Young v. Secretary of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990). Moreover, Dr. Vollenweider also commented that the plaintiff had problems in terms of medical compliance, which was "not optimized" and this affected his cardiac and "bony" problems. (Tr. 340). Failure to follow medical treatment detracts from a finding of disability. Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1111 (6th Cir. 1986) (citing 20 C.F.R. 404.1530). The plaintiff also argues that a person with a sit/stand option cannot do light level work, citing Social Security Ruling 83-12, but this Ruling merely states that a vocational specialist should be consulted in such cases. The ALJ did so.

Finally, the plaintiff maintains that the ALJ did not ask the VE to clarify that her testimony was specifically consistent with the Dictionary of Occupational Titles (DOT) in regard to the one light level job identified, gatekeeper.  The administrative transcript shows that immediately after giving the light and sedentary jobs and their numbers in the state and national economies, the ALJ asked:

> Q:  Now, the jobs you've just cited as examples at the light and sedentary exertional level, are there jobs consistent with the DOT [INAUDIBLE] description?

Heath

A:  With the exception of, surveillance monitor is listed as a--the industry is government but in reality, there are several industries that have security monitors. And the DOT does not specifically address the sit/stand option. That's something we do when we get to job placement.

Q:  Have you found when you--based on your experience, that when you were involved in job placement, that there are jobs that would accommodate a sit/stand option?

A: Yes, sir.

(Tr. 70).

Although the plaintiff argues that this testimony is unclear, it appears certain that the VE addressed the issue of the conflict between the DOT and the job of surveillance monitor--no other specific job was mentioned--and that the ALJ's follow-up question encompassed that position as one of the ones that would accommodate a sit/stand option.

The decision will be affirmed.

This the ___30___ day of November, 2006.


G. WIX UNTHANK
SENIOR JUDGE

12